Warner, J.
On May 17th, 1911, the plaintiff filed his petition for divorce against the defendant in this court, alleging residence required by statute.
In her answer the defendant denies that the plaintiff was a resident of this state and county at' the time said petition was filed, and alleges that he was then and still is a resident of Washington, D. C. The jurisdiction of the court is thus brought in question.
*222 The terms “resident” and “bona fide residence,” as used in the statutes on divorce (Section 11980 of the General Code of Ohio) have uniformly been construed by the courts in this country as meaning domicil. Bishop on Marriages and Divorce, Section 209, and citations, Nelson on Divorce, Section 41.
Bouvier defines domicil as “that place where a man has his true, fixed and permanent home, and principal establishment, and to which when he is absent he has the intention of returning.” It has been held by the courts that domicil is “the place where a -person lives, or has his home, to which when absent from it he intends to return, and from which he has no present purpose to remove.” Keezer on Divorce, Section 197, and citations. In Bishop on Marriages and Divorce, Section 118, the author declares that “domicil is the place in which, both in fact and intent, the home of a person is established, without any purpose to return to a former home. ’'
In Nelson on Divorce, Section 40, it is declared that “the domicil of choice requires an actual residence combined with an intention to so reside for an indefinite time.”
The authorities all agree that mere residence is not sufficient; that intention without sufficient acts to support it is not controlling ; that change of residence must, to constitute new domicil, be with the animus non revertend/i; that wherever one goes the animus manendi must exist, not ostensibly but really; and that a person can not have two domicils at the same time, but is presumed to continue the old, until a new one is clearly acquired.
The plaintiff claims that his domicil was changed from Washington, D. C., to Cincinnati, in April, 1910. Previously for some twelve years he had .resided in Washington with his wife and children, and at the time he came to Cincinnati to .establish a residence was interested in business in the former city and is still.
The fact that he was in the employ of the Government when he removed to Washington and has since returned to Cincinnati to vote at nearly all elections is of no significance upon the question now raised. Citizenship for the purpose .of exercising the right of suffrage is quite a different thing from domicil in matters of divorce. When the plaintiff came to Cincinnati in April, *223 1910, lie rented a furnished room which he has retained until the present time; stated to acquaintances that it was his intention to make Cincinnati his home; made some inquiries about business openings there and at other times when in Cincinnati; and remained at that time about ten days. He was back in Cincinnati for a few days in June and November, 1910, and in February and May, 1911.
He returned to Washington in April,.1910, and lived, at least a part of the time with his wife and family at an apartment house called The Frederick, as clearly shown by the evidence of his daughter*and tenants of The Frederick. In the summer he went abroad, taking his wife with him, for some three months. On their return the apartments at The Frederick were again occupied by them. He left very soon and one witness states that she was there when he was packing his things to go, and narrates conversation with him about his going so soon after his return from Europe. He probably had a room in Washington in another part of the city which he occupied at times. He testifies that he was trying to close out his business interests there, but had not done so as yet. As a side light-on the question of domicil, it appears that in the latter part of 1909 he brought suit for divorce against his wife in the courts of the District of Columbia, on the ground of adultery; that such suit was amicably adjusted and dismissed upon certain conditions which he claims she subsequently violated and which seems to have been the source of much friction in. their subsequent marital life. It also appears that he was greatly attached to his two daughters one of whom was afflicted with a serious disease, and both of whom have never resided apart from their mother.
Upon these facts and principles of law applicable thereto, did the plaintiff acquire a domicil in this state and country in April, 1910, and was he a Iona fide resident of Cincinnati and Hamilton county when the suit was instituted? I think not.
In order to abandon and discontinue his previous domicil in Washington, it became imperatively necessary that he should absolutely sever all marital and home relations with his wife, and never resume the same. This he did not do, but on the contrary he did occupy the apartments at The Frederick with his *224 wife and children subsequent to his visit to Cincinnati in April, 1910, for a time at least, and did in the summer of that year take a European trip of about three months with his wife, and on their return was again at The Frederick with his family for a brief space. It is apparent that his personal belongings remained at the family residence where he was packing to leave shortly after the return from Europe.
His stays in Cincinnati, the few times he was here, were so short, and his renting a furnished room that he rarely occupied so peculiar, that taken in connection with his continued subsequent marital relations with his wife, the conclusion is compelled that he had come here solely for the purpose of'obtaining a divorce, and not with any clear intention of changing his domicil at that time. Whatever may have been his intention, his acts conclusively rebutted any change of domicil.
It has been held that where a person spends part of his time in one state, and the other part at his home in another, and where he has no business in the former, but seems to be gaining a residence for the purpose of divorce only, he is not a bona fide resident. Albee v. Albee, 43 Ill. App., 370.
The public is interested in the proper administration of the laws affecting marriage and divorce, and it would be intolerable to permit any loose and liberal construction of our statutes, adopted to protect and conserve the marital relations of our people, to be used by any one not a bona fide resident of the state for the mere purpose of' obtaining a divorce.
The petition will be dismissed for want of jurisdiction, at plaintiff’s costs.